# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SIMON NEWMAN,

      **Plaintiff,**

v.                                                                     Civil action no. 1:07cv121
                                                                     (Judge Keeley)

**UNITED STATES OF AMERICA.**

      **Defendant.**

## REPORT AND RECOMMENDATION

On September 13, 2007, the *pro se* plaintiff, Simon Newman, filed this action under the Federal Tort Claims Act. On October 11, 2007, the plaintiff was granted leave to proceed *in forma pauperis*. On October 16, 2007, the undersigned made a preliminary review of this matter and determined that summary dismissal was not warranted. Accordingly, the Clerk was directed to issue a 60 day summons for the United States Attorney's Office for the Northern District of West Virginia and the Attorney General for the United States of America. On February 26, 2008, the defendant filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment, together with numerous exhibits and attachments. On February 27, 2008, a Roseboro Notice was issued, and on March 31, 2008, the plaintiff filed a response. Accordingly, this matter is now pending before me for a Report and Recommendation.

## I. Factual Background

The plaintiff pleaded guilty in the United Stated District Court for the Eastern District of New York to the Charge of Interference With Commerce By Threat Or Violence in violation of 18 U.S.C. §§ 1951 and 3551. (See 1:03cr153-FB-1). On June 28, 2005, he was sentenced to a term of 72 months

incarceration, followed by a three year period of supervised release. (Id.) His projected release date via good conduct release is September 20, 2008. (Doc. 23-3, p. 3). At the time of the incident giving rise to this cause of action, the plaintiff was incarcerated at USP Hazelton, which is located in Bruceton Mills, West Virginia. The plaintiff has since been transferred to the Federal Correctional Complex located in Beaumont, Texas. (Doc. 23-3, p. 2).

## II. The Complaint

The plaintiff asserts that Lt. Clement and a "squad" came to his cell on or about July 7, 2006. Plaintiff asserts that all of his clothes were cut from his body, except for his boxers and socks. Plaintiff was then handcuffed in a black-box, waist chain and leg irons, and marched out of his cell. Once outside the cell, Plaintiff was led through some water that had settled on the floor, wetting his socked feet. As a result, Plaintiff slipped on a staircase injuring his ankle and causing lacerations to his wrists and ankles. While Plaintiff lay on the floor in excruciating pain, Lt. Clement ordered his squad to pick Plaintiff up by his arms and injured foot without regard for the pain plaintiff was experiencing. Plaintiff was carried to another cell where he was deposited on the floor. Plaintiff was joined by two other shackled inmates.

Second, Plaintiff asserts that Lt. Clement and the others knew that Plaintiff was a government snitch, yet they knowingly placed him in a cell with two inmates who harbor a deep hatred for snitches. Plaintiff was made to sleep in these conditions for two days and one night. During this time, Plaintiff remained shackled and without clothes. Plaintiff asserts that he was freezing and that the waist chain touching his bare skin was torture. Plaintiff also asserts that every movement hurt as the leg irons rubbed his injured ankle.

Third, Plaintiff asserts that staff later moved him to an "all-purpose room" that has no toilet

2

or running water. Plaintiff asserts that he was forced to lie on cold concrete while the air conditioner ran full blast, while still only dressed in boxers and socks. Plaintiff also asserts he had to urinate and defecate on the floor and that he had no toilet paper with which to clean himself.

Fourth, Plaintiff asserts that on or about July 8, 2006, staff denied him lunch. On or about July 9, 2006, staff also allegedly denied Plaintiff breakfast. Plaintiff asserts that the actions of the staff were in retaliation for his filing administrative remedies against Officer Benton and other USP-Hazelton staff.

Finally, Plaintiff asserts that in an effort to cover-up their illegal actions, Officer J. Steeber issued a false incident report. Plaintiff further asserts that all of his efforts at seeking administrative remedy were sabotaged in one way or another.

As relief, plaintiff seeks $1,500,000 in damages for pain, suffering, physical torture and the retaliatory nature of his physical abuse and false paperwork by USP Hazelton to cover-up the abuse.

### III. Defendant's Response

In support of its Motion to Dismiss, or in the alternative, Motion for Summary Judgment, the defendant contends that he plaintiff's negligence claim must be dismissed because plaintiff cannot establish the elements of negligence under West Virginia law. In addition, the defendant argues that the plaintiff's constitutional rights were not violated.

### IV. Plaintiff's Reply

In his reply, the plaintiff makes numerous allegations that the affidavits supplied by the defendant contain perjured testimony. However, the plaintiff does not supply any evidence to support his allegations, and as discussed more fully below, even if the plaintiff's complaint is taken as true, the majority of the allegations fail to state a claim which would entitle the plaintiff to relief

under the FTCA.

IV. **Standard of Review**

A. **Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. **Discussion**

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

Pursuant to the FTCA, the United State is liable in the same manner and to the same extent as a private individual under like circumstances in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 2674 and 1346(b)(1); Medina v. United States, 259 F.23d 220, 223 (4th Cir. 2001). In West Virginia, in every action for damages resulting from injuries to the plaintiff alleged to have been inflicted by the negligence of the defendant, the plaintiff must establish three elements: (1) a duty which the defendant owes to him; (2) a negligent breach of that

duty; and (3) injuries received thereby, resulting proximately from the breach of that duty. Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d898, 899 (W.Va. 1939).

**A. Plaintiff's Slip and Fall Claim**

The plaintiff's first claim is that on July 7, 2006, he was removed from his cell and led through some water in his stocking feet. He claims that he then slipped on a staircase and injured his ankle causing excruciating pain. In order to establish a prima facie negligence claim in a "slip and fall" case, the plaintiff must show (1) that the owner had actual or constructive knowledge of the foreign substance or defective condition; and (2) that the invitee had no knowledge of the substance or condition or was prevented by the owner from discovering it. McDonald v. University of W.Va. Board of Trustees, 444 S.E.2nd 57, 60 (W.Va. 1994).

Here, the plaintiff cannot establish that he was unaware of the water on the floor. By his own admission, the plaintiff knew that he had walked through water and that his feet had become wet. Furthermore, and more importantly, even if the plaintiff could demonstrate that the BOP breached its duty of care to the plaintiff, thus establishing a prima facie claim of negligence, the weight of the evidence establishes that the plaintiff suffered no injury as the result of any fall he may have taken during his transport between cells.

Although the plaintiff alleges that he slipped on the staircase thereby injuring his ankle, causing lacerations to his wrists and ankles and excruciating pain, the evidence submitted by the defendant establishes otherwise. First, there appears to be no dispute that the plaintiff did stumble on the stair while he was being moved. (See Doc. 23-5, pp. 3-4). However, the guards, who were on either side of the plaintiff and holding his arms, "pulled him upright, carried him off the staircase, and laid him on the floor while health services assessed his condition." (Id.). The plaintiff refused

6

to respond to the supervising lieutenant's inquiry as to whether he was injured. (Id. at 4). However, when Health Services asked him if he was injured, the plaintiff responded in the negative. (Id.) Furthermore, the Inmate Assessment and Followup Form, prepared by Health Services Technician Rice indicates that when he examined the plaintiff after the transport he was in restraints, was alert, and did not have any apparent injuries, and denied any injury at that time. (Doc. 23-11, p. 2). Subsequently, Health Services performed five assessments of the plaintiff's condition beginning at 11:15 p.m., July 7, 2006 through 2:50 p.m., July 8, 2006. Although the plaintiff complained of a twisted ankle at the time of the 11:15 p.m. assessment, his ankle did not appear swollen, and the plaintiff made no further complaints during the remaining four assessments. Finally, the medical records maintained by USP Hazelton through November 21, 2007, reflect that the plaintiff never again complained of pain in his ankle or wrists. (Docs. 23-10, 23-11, 23-12, and 26). Accordingly, there is no evidence to suggest that the plaintiff suffered any physical injuries as the result of slipping on the stairs that would entitle him to compensation under the FTCA.

## B. Plaintiff's Conditions of Confinement Claim

In addition to his allegation that he suffered injuries that entitle him to compensation, the plaintiff also makes several allegations regarding the conditions of his confinement during the forty-eight hours after his removal from his original cell in the Special Housing Unit ("SHU"). However, none of his claims demonstrate that he entitled to compensation under the FTCA.

First, the plaintiff claims that even though the guards knew he was a snitch, he was knowingly placed in a cell with two inmates who harbored a deep hatred for snitches. The defendant acknowledges that the plaintiff was forced to share a cell with two inmates from the evening of July 7, 2006 to approximately 11:30 a.m. on July 8, 2006, when he was moved to the all-purpose room.

7

However, prison records do not disclose any restrictions that would prevent the plaintiff from sharing a cell with other penitentiary inmates. Because there were no orders of separation or protection for the plaintiff, his placement in a cell with two other inmates was not unreasonable and did not breach the defendant's duty of care. Furthermore, the plaintiff does not allege that he was physically harmed by these inmates or even that they behaved in a fashion which caused him to fear for his safety. According, the plaintiff's complaint that he was housed with two inmates who harbored a deep hatred for snitches fails to state a claim entitling him to compensation under the FTCA.

Second, the plaintiff alleges that for two days and one night he remained shackled and without clothes. He alleges that it was freezing in the room and that the waist chain touching his bare skin was torture. He also asserts that every movement hurt as the leg irons rubbed against his injured ankle.

In this particular case, the plaintiff refused to accept a cell mate in his original cell, and therefore, prison policies required staff to remove him from the cell and place him in temporary housing until he complied with orders. (Doc. 23-5, p. 2). Ambulatory restraints, which were used on the plaintiff, consist of handcuffs (in front of the inmate), leg irons, and a Martin chain (wraps around the lower portion of the inmate's abdomen and connects to the handcuffs to limit and avoid the inmate's ability to strike at staff or other inmates). (Id.) Ambulatory restraints allow an inmate to eat, drink, and take care of basic human need (walk, stand, sleep, use of toilet) without staff intervention. BOP Policy Statement 5566.06, p. 11). While in ambulatory restraints, inmates are permitted to wear only boxer shorts, a t-shirt, and socks, so as not to interfere with the restraint mechanism. (Doc. 23-5, p. 3).

8

The defendant acknowledges that the plaintiff was confined to ambulatory restraints from the afternoon of July 7, 2006 until the afternoon of July 8, 2006. However, pursuant to BOP policy, the restraints were examined every fifteen minutes by staff personnel and every two hours by staff lieutenants to ensure that the restraints were not causing extreme discomfort and that the plaintiff was not in distress. In addition, Health Services personnel examined the plaintiff six times while he was in restraints. During each of these examinations, Health Services documented that the plaintiff's vital signs and circulation were good and that the restraints were not causing injury or extreme discomfort. (See BOP Policy Statement 5566.06, p. 11, and Docs. 23-8, 23-9, and 23-13). Therefore, there is no evidence to suggest that the plaintiff suffered any injury or discomfort that would remotely entitle him to compensation for having been placed in ambulatory restraints for an approximate twenty four hour period.

The plaintiff also alleges that he was later moved to an "all-purpose room" that had no toilet or running water. The plaintiff further alleges that he was forced to lie on cold concrete while the air conditioner ran full blast, while still dressed in only boxers and socks. Finally, the plaintiff alleges that he had to urinate and defecate on the floor and had no toilet paper with which to clean himself. However, contrary to the plaintiff's bald accusations, the exhibits tendered by the defendant establish that the plaintiff was placed in all purpose room #3 within the SHU which room is used to temporarily house inmates in the SHU who refuse to occupy a regular SHU cell or share a SHU cell with another inmate. Inmates are placed in this room until they are no longer a safety risk to others. According to the affidavit supplied by the defendant, all purpose room #3 is a well lit room that measures approximately one hundred and forty-eight square feet. The temperature is kept at the same level as all other cells in the SHU because they share the same heating and cooling

9

system. Although the room does not have running water, inmates are provided with bedpans, toilet paper and urine bottles. All of these standard conditions were present during the plaintiff's stay in the all purpose room. In addition, the plaintiff was provided with food, a bed, and blankets. (Doc. 23-14). Therefore, the weight of the evidence establishes that during his stay in the all purpose room, the plaintiff was provided with more than adequate accommodations which did not expose him to any deprivations sufficient to entitle him to compensation under the FTCA.

Finally, the plaintiff alleges that he was denied lunch on July 8, 2006, and breakfast on July 9, 2006. Again, the plaintiff's bald allegations are refuted by the exhibits submitted by the defendant. The SHU logs clearly demonstrate that the plaintiff was provided both those meals. More specifically, the logs reflect that the plaintiff received breakfast, lunch, and dinner on both July 8 and 9, 2006.

The standards for an Eighth Amendment challenge to the conditions of an inmate's confinement were summarized by the Supreme Court as follows: "To the extent that conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offensives against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Prison conditions, "alone or in combination," are only cruel and unusual punishment if they result "in unquestioned and serious deprivation of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities." Id. Here, taken in light most favorable to the plaintiff, it is clear that the plaintiff's allegations concerning the conditions of his confinement during the period referenced in his complaint are not sufficient to state a claim of constitutional proportions and clearly fail to demonstrate that he is in any way entitled to compensation under the FTCA.

**C. Plaintiff's Allegations of a False Incident Report**

The plaintiff's final allegation is that in an effort to cover-up their illegal actions, Officer Steeber issued a false incident report. The record reflects that on July 7, 2006, an Incident Report was prepared charging the plaintiff with a Code 307 violation, Refusing to obey an order of any staff member. (Doc. 23-20). In particular, the Incident Report indicates that on July 7, 2006, at approximately 3:30, the plaintiff was given a direct order to "cuff up." When the plaintiff asked why, he was told he was going to be removed from the cell. In response, the plaintiff replied, "Get the Lieutenant because I'm not moving."[1] This response apparently led to the plaintiff being placed in ambulatory restraints and his eventual move to the all purpose room in the SHU and the sequence of events that plaintiff alleges resulted in his injuries and unconstitutional conditions of confinement. However, even if the incident report issued was inaccurate or false, the plaintiff cannot demonstrate that he was harmed by the issuance of the report. The plaintiff's discipline history does not indicate that any disciplinary hearing was conducted as the result of this incident report. Moreover, no disciplinary sanctions, other than those that occurred on July 7th and 8th, and have already been addressed in this Report and Recommendation, were imposed as the result of the Incident report. (Doc. 23-21). Therefore, the plaintiff's claim that he was issued a false incident report, even if true, fails to state a claim which would entitle him to relief under the FTCA.

## IV. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendant's Motion to Dismiss, or in the alternative for Summary Judgment (Doc. 23) be **GRANTED** and the

---

[1] The Incident Report actually indicates that Inmate Mitchell made the statement. However, because the plaintiff maintains that he was always the sole occupant of his cell, the undersigned assumes that this is a typographical error. However, even if the Incident Report is erroneous, or fabricated, as discussed in the text of the Report and Recommendation, the plaintiff is not entitled to compensation.

plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985) Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

Dated: June 25, 2008

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE